DAVID CHIU, State Bar #189542
City Attorney
MEREDITH B. OSBORN, State Bar #250467
Chief Trial Deputy
LOUISE S. SIMPSON State Bar #115253
THOMAS S. LAKRITZ, State Bar #161234
Deputy City Attorneys
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:      (415) 554-3963
Facsimile:      (415) 554-3837
E-Mail:         tom.lakritz@sfcityatty.org


Attorneys for Third-Party Defendant
CITY AND COUNTY OF SAN FRANCISCO


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY SAVAGE, an individual. | Case No. 23-cv-00915-WHA |
| Plaintiff, | **CITY AND COUNTY OF SAN FRANCISCO'S NOTICE OF MOTION AND MOTION TO TRANSFER FOR *FORUM NON CONVENIENS*** |
| vs. | |
| 1231 MARKET STREET OWNER, L.P., and DOES 1-10, | 28 U.S.C. § 1404(a) |
| Defendants. | Hearing Date:    June 8, 2023<br>Time:            8:00 a.m.<br>Place:           Courtroom 12, 19th Floor |
| | Trial Date:      Not Set |
| 1231 MARKET STREET OWNER, L.P. | |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO and ROES 1 through 50, inclusive | |
| Third-Party Defendants. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) ................................................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

INTRODUCTION .............................................................................................................. 2

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................... 2

      I.      COVID-19.......................................................................................... 2

      II.     EMERGENCY AGREEMENT ........................................................ 4

      III.    MR. SAVAGE'S COMPLAINT AGAINST THE HOTEL................. 6

      IV.   THE HOTEL'S THIRD-PARTY COMPLAINT AGAINST THE CITY AND COUNTY OF SAN FRANCISCO ......................................................... 6

ARGUMENT ...................................................................................................................... 7

      I.      LEGAL STANDARD........................................................................ 7

      II.     THE COURT SHOULD ENFORCE THE PARTIES' FORUM-SELECTION CLAUSE ........................................................................ 8

      III.    EXTRAORDINARY CIRCUMSTANCES DO NOT EXIST TO VOID THE PARTIES' FORUM-SELECTION CLAUSE ....................................... 10

CONCLUSION................................................................................................................... 11

## TABLE OF AUTHORITIES

**State Cases**
*Drulias v. 1st Century Bancshares, Inc.*
  30 Cal.App.5th 696 (2018) ...................................................................................................10

**State Statutes & Codes**
California Civil Code § 1714.................................................................................................6

California Civil Code § 51.....................................................................................................6

California Civil Code § 54.1..................................................................................................6

California Code of Civil Procedure § 410.30 ......................................................................10

California Government Code § 12955....................................................................................6

California Government Code § 8550......................................................................................2

**Federal Cases**
*Adema Techs., Inc. v. Wacker Chem. Corp.*
  657 F. App'x 661 (9th Cir. 2016) .........................................................................................8

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*
  571 U.S. 49 (2013)................................................................................................7, 8, 9, 10

*Bloom v. Express Servs. Inc.*
  2011 WL 1481402 (N.D. Cal. Apr. 19, 2011) .....................................................................9

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*
  817 F.2d 75 (9th Cir. 1987) .................................................................................................8

*In re Becker*
  993 F.3d 731 (9th Cir. 2021) ...............................................................................................8

*Lapachet v. California Forensic Med. Grp., Inc.*
  2017 WL 3917209 (N.D. Cal. Sept. 7, 2017) ......................................................................9

*Lewis v. Liberty Mut. Ins. Co.*
  953 F.3d 1160 (9th Cir. 2020) .............................................................................................8

*Lockman Found. v. Evangelical All. Mission*
  930 F.2d 764 (9th Cir. 1991) .............................................................................................11

*M/S Bremen v. Zapata Off-Shore Co.*
  407 U.S. 1 (1972)...........................................................................................................8, 10

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*
  858 F.2d 509 (9th Cir. 1988) ...............................................................................................8

*N. California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*
  69 F.3d 1034 (9th Cir. 1995) .................................................................................8

*Petersen v. Boeing Co.*
  715 F.3d 276 (9th Cir. 2013) ...............................................................................10

*Piper Aircraft Co. v. Reyno*
  454 U.S. 235 (1981).................................................................................................9

*Ponomarenko v. Shapiro*
  287 F. Supp. 3d 816 (N.D. Cal. 2018) ...................................................................8

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*
  926 F.2d 865 (9th Cir. 1991) .................................................................................8

*Stewart Org., Inc. v. Ricoh Corp.*
  487 U.S. 22 (1988)................................................................................................10

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*
  915 F.2d 1351(9th Cir. 1990) ................................................................................8

*Yei A. Sun v. Advanced China Healthcare, Inc.*
  901 F.3d 1081 (9th Cir. 2018) ...............................................................................8

**Federal Statutes**
28 U.S.C. § 1404(a) ........................................................................................8, 10, 11

28 U.S.C. § 1440(a) ......................................................................................................2

42 U.S.C. § 3601............................................................................................................6

**San Francisco Statutes, Codes & Ordinances**
San Francisco Administrative Code Chapter 21 ..........................................................4

San Francisco Administrative Code Chapter 7 ............................................................2

San Francisco Charter § 3.100(13) ..............................................................................2

**NOTICE OF MOTION AND MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. § 1404(a)**

**TO THE COURT AND TO COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 8, 2023, at 8:00 a.m., or as soon thereafter as this matter may be heard before the Honorable William H. Alsup, United States District Court, San Francisco, California, Defendant City and County of San Francisco ("Defendant" or "the City") will, and hereby does, move the Court for an order pursuant to 28 U.S.C. § 1404(a) transferring 1231 Market Street Owner, L.P.'s Third-Party Complaint Against the City and County of San Francisco (ECF No. 11) to the Superior Court for the City and County of San Francisco based on *forum non conveniens*. The forum selection clause in the agreement between 1231 Market Street Owner, L.P. ("the Hotel") and the City expressly provides "[a]ny legal suit, action, or proceeding arising out of or relating to this Amendment shall be instituted in the Superior Court for the City and County of San Francisco, and each party agrees to the exclusive jurisdiction of such court in any such suit, action, or proceeding."

This motion is based on this Notice of Motion and Motion to Transfer and Memorandum of Points and Authorities filed herewith, the declaration of Deputy City Attorney Thomas S. Lakritz, the concurrently filed Request for Judicial Notice, the file in this case, the argument of counsel at the hearing, and any such further matters as the Court deems appropriate.

Dated:  April 25, 2023

DAVID CHIU
City Attorney
MEREDITH B. OSBORN
Chief Trial Deputy
LOUISE S. SIMPSON
THOMAS S. LAKRITZ
Deputy City Attorneys

By: */s/  Thomas S. Lakritz*
THOMAS S. LAKRITZ

Attorneys for Third-Party Defendant
CITY AND COUNTY OF SAN FRANCISCO

Motion to Transfer 3rd Party Complaint        1        n:\health\li2023\230661\01672688.docx
Case No. 23-cv-00915-WHA

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

1231 Market Street Owner, L.P. ("the Hotel") filed its Third-Party Complaint Against the City and County of San Francisco ("the City") (ECF No. 11) seeking indemnity and declaratory relief from the City in a civil rights action against the Hotel by person who was placed in the Hotel Whitcomb during the COVID-19 emergency (*see* ECF No. 1-1). The Hotel seeks indemnity from the City based on an Emergency Agreement and Amendments entered into between the Hotel and the City to provide shelter to certain people during the COVID-19 emergency. While the Emergency Agreement and Amendments do provide indemnity provisions, they also contain a forum-selection clause that expresses the parties' joint decision that the exclusive jurisdiction for any legal claim arising out of the Emergency Agreement and Amendments would be in the Superior Court for the City and County of San Francisco.

The City moves under 28 U.S.C. § 1440(a) for an order transferring the Hotel's Third-Party Complaint Against the City to the Superior Court for the City and County of San Francisco. Because the forum-selection clause is valid and expressed in mandatory and exclusive language, the Court should grant the City's motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### I.    COVID-19

San Francisco Mayor London Breed proclaimed the existence of a local emergency due to COVID-19 on February 25, 2020. City and County of San Francisco's Request for Judicial Notice ("RJN"), Exhibit A. Mayor Breed's proclamation stated in part:

> WHEREAS, California Government Code Sections 8550 et seq., San Francisco Charter Section 3.100(13) and Chapter 7 of the San Francisco Administrative Code empower the Mayor to proclaim the existence of a local emergency, subject to concurrence by the Board of Supervisors as provided in the Charter, in the case of an emergency threatening the lives, property or welfare of the City and County or its citizens; and

> WHEREAS, The United States has confirmed cases of individuals who have a severe acute respiratory illness caused by a novel (new) coronavirus ("COVID-19" or "the virus") first detected in Wuhan, Hubei Province, People's Republic of China ("China"). The virus was first reported in China on December 31, 2019. As of February 24, 2020, the World Health Organization ("WHO") has reported approximately 77,262 confirmed cases of COVID-19 in China, more than the number of confirmed cases of Severe Acute Respiratory Syndrome

(SARS) during its 2003 outbreak. An additional 2,069 cases have been confirmed across 29 other countries; in many of these cases, the infected individuals had not visited China. More than 2,500 people have died from the virus, including 23 outside of China. The number of confirmed cases has continued to escalate dramatically over a short period of time; and

WHEREAS, WHO officials now report that sustained human-to-human transmission of the virus is occurring. Transmission from an asymptomatic individual has been documented. Although the majority of individuals infected with COVID-19 recover from the disease without special treatment, approximately 1 in 6 may become seriously ill. Manifestations of severe disease have included severe pneumonia, acute respiratory distress syndrome, septic shock, and multi-organ failure. Approximately 2% of the people confirmed infected with COVID-19 have died; and

WHEREAS, On January 30, 2020, WHO declared the COVID-19 outbreak a public health emergency of international concern, and on January 31, 2020, the U.S. Department of Health and Human Services declared a Public Health Emergency for the United States; and

WHEREAS, The Centers for Disease Control and Prevention ("CDC") has determined that the virus presents a serious public health threat, requiring coordination among state and local health departments to ensure readiness for potential health threats associated with the virus; and

WHEREAS, The CDC has issued guidance to local and State health departments, including San Francisco's Department of Public Health ("DPH"), concerning risk assessment and public health management of persons with potential exposure to COVID-19. These guidelines require DPH to make extraordinary efforts to monitor ongoing communicable disease threats and prepare for management of individuals who may have been exposed to COVID-19; and

WHEREAS, DPH, the Department of Emergency Management, and other City partners have been working successfully and diligently to implement CDC guidelines, but now require additional tools and resources to protect the public health given the current state of the epidemic and the need for a sustained response; and

WHEREAS, The City's Director of Public Health has determined that DPH cannot comply with the CDC's guidance without immediate action beyond the City's ordinary response capabilities, including directing personnel and resources from other City departments to assist with the ongoing and developing threat of COVID-19; and

WHEREAS, Conditions of extreme peril to the safety of persons and property have arisen; and

WHEREAS, The Mayor does hereby proclaim that the aforesaid conditions of extreme peril warrant and necessitate the proclamation of the existence of a local emergency,

***

It is further ordered that:

(1) All City and County officers and employees take all steps requested by the Director of Public Health to prevent the spread of COVID-19 and to prevent or alleviate illness or death due to the virus; and

(2) All City and County officers and employees take all steps requested by the Director of Public Health to qualify the City for reimbursement from the

Motion to Transfer 3rd Party Complaint          3          n:\health\li2023\230661\01672688.docx
Case No. 23-cv-00915-WHA

Federal Emergency Management Agency and for other state and federal relief as may be available to reimburse the City for the expenses it incurs in addressing this emergency; and

*Id*. On March 4, 2020, Governor Gavin Newsom issued a proclamation of a state emergency related to COVID-19. RJN, Exhibit B.

## II.     EMERGENCY AGREEMENT

Based on the Mayor's and the Governor's proclamations, the City took aggressive and immediate steps to prevent the spread of COVID-19 and protect the City's most vulnerable residents, including those experiencing homelessness. On or about April 4, 2020, the Hotel entered into an Emergency Lease Agreement with the City and County of San Francisco under which the City was to use the rooms and services of the property to further the public health and safety in connection with its response to the Local Emergency by sheltering and serving persons such as Mr. Henry Savage. *See* Third Party Compl. ("TPC") ¶ 9, ECF No. 11; *see* also Declaration of Thomas S. Lakritz ("Lakritz Decl."), Exhibit A (Emergency Agreement between the City and County of San Francisco and 1231 Market Street Owner L.P. for the Hotel Whitcomb ["Emergency Agreement"]). The purpose of the Emergency Agreement was stated as follows:

> WHEREAS, this Agreement is an emergency services contract awarded pursuant to procedures applicable under the Local Emergency declared by Mayor London Breed on Tuesday, February 25, 2020 (the "Local Emergency"), and Chapter 21 of the San Francisco Administrative Code; and
>
> WHEREAS, the City's Human Services Agency ("Department") wishes to procure the following emergency services in support of the Local Emergency: provision of hotel rooms and related services in the Hotel as more particularly described herein and in Appendix A (Rooms and Scope of Services); and,
>
> WHEREAS, City will use the Rooms and Services (as hereinafter defined) to further the public health and safety in connection with its response to the Local Emergency by sheltering and serving persons (a) who have come in close contact with a COVID-19 positive individual but have not been tested, or who have been tested and are awaiting results (14 day quarantine), or (b) who have tested positive for COVID-19 but do not have a medical need to be hospitalized (each of the foregoing, a "Guest", and collectively, the "Group"), all as further described in Appendix A; and
>
> WHEREAS, the Parties understand and acknowledge that Department will allow persons described in the foregoing recital to use the Rooms and Services, as invitees, for shelter as a necessary response to the Emergency, and such persons will have no right to exclusively occupy the Rooms as tenants under State or local laws, including the City's Rent Ordinance.

*Id.* at 1. The term of the Emergency Agreement was April 8, 2020 to August 7, 2020. *Id.* at 2. The Emergency Agreement was drafted by both the Hotel and the City:

> This Agreement has been drafted through a cooperative effort of City and Hotel, and both Parties have had an opportunity to have the Agreement reviewed and revised by legal counsel. No Party shall be considered the drafter of this Agreement, and no presumption or rule that an ambiguity shall be construed against the Party drafting the clause shall apply to the interpretation or enforcement of this Agreement.

*Id.* at 15.

The Emergency Agreement was amended six times, extending the term of the Emergency Agreement and other terms. *See* Lakritz Decl., Exhibits B–G.

As part of the Sixth Amendment to the Emergency Agreement, the parties agreed to extend the term of the Emergency Agreement and added a mandatory forum-selection clause that provided that the parties agreed that any legal action arising out of or relating to the Emergency Agreement shall be instituted in the Superior Court for the City and County of San Francisco, and each party agrees to the exclusive jurisdiction of such court in any such suit, action, or proceeding:

> **Section 7. <u>Applicable Law</u>.** This Amendment will be governed by, construed, and enforced in accordance with the laws of the State of California and City's Charter. Any legal suit, action, or proceeding arising out of or relating to this Amendment shall be instituted in the Superior Court for the City and County of San Francisco, and each party agrees to the exclusive jurisdiction of such court in any such suit, action, or proceeding (excluding bankruptcy matters). The parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action, or proceeding in such court and irrevocably waive and agree not to plead or claim that any suit, action, or proceeding brought in San Francisco Superior Court relating to this Amendment has been brought in an inconvenient forum. The Parties also unconditionally and irrevocably waive any right to remove any such suit, action, or proceeding to Federal Court.

Lakritz Decl., Exhibit G at 4.

The Hotel and the City intended that the Sixth Amendment would amend the Emergency Agreement and control any dispute related to the Emergency Agreement:

> **Section 5.      <u>No Other Amendment; Entire Agreement</u>**. Except as expressly modified by this Amendment, all of the terms and conditions of the Agreement shall remain unchanged and in full force and effect. The Agreement as amended by this Amendment constitutes the entire agreement between City and Hotel with respect to the subject matter of the Agreement and supersedes and cancels any and all previous negotiations, agreements, or understandings, if any, regarding the matters contained in the Agreement. In the event of any conflict between the terms of the Agreement and the terms of this Amendment, the terms of this Amendment will control.

Lakritz Decl., Exhibit G at 4.

As anticipated by the Emergency Agreement and Amendments, the City provided housing, food, and services to individuals in the 459 rooms in the Hotel Whitcomb during the COVID-19 emergency.

## III.    MR. SAVAGE'S COMPLAINT AGAINST THE HOTEL

Mr. Savage filed a first amended complaint against the Hotel alleging claims for (1) violations of The Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et seq.; (2) California Fair Employment and Housing Act, Cal. Gov't Code § 12955 et seq.; (3) California Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq.; (4) California Disabled Persons Act, Cal. Civ. Code § 54.1 et seq.; and (5) Negligence, Cal. Civ. Code § 1714. First Am. Compl. ("FAC"), ECF No. 1-1; *see also* TPC ¶ 8.

Mr. Savage alleges that the Hotel discriminated against him based on disability by failing to provide accessible facilities, privileges, and advantages on the residential property. FAC ¶ 9; *see also* TPC ¶ 8. He also alleges that the Hotel failed to provide adequate accessibility features for disabled persons. FAC ¶ 9; *see also* TPC ¶ 8. Finally, Mr. Savage alleges that the hotel injured him by its refusal to enter into the interactive process with him after receiving his request for a reasonable accommodation. FAC ¶ 63; *see also* TPC ¶ 8 Mr. Savage seeks injunctive relief, statutory penalties, actual and punitive damages, reasonable attorney's fees, and costs of suit. FAC ¶ 6; *see also* TPC ¶ 8

## IV.    THE HOTEL'S THIRD-PARTY COMPLAINT AGAINST THE CITY AND COUNTY OF SAN FRANCISCO

Based on the indemnification clause in the Emergency Agreement, the Hotel filed its action for breach of indemnity and declaratory relief against the City, seeking indemnification from the City for Mr. Savage's lawsuit. TPC.

The indemnification clauses of the Emergency Agreement and Amendments states:

5.2    **Indemnification**.

5.2.1    **Indemnification by City**. City shall completely and unconditionally indemnify, defend and hold Hotel; its manager, Highgate Hotels, L.P. ("Highgate"); their respective direct or indirect members (including, but not limited to, RF Whitcomb Partner LLC, RF Whitcomb LLC, RFR Holding LLC, and The Brood, LLC, Sub-Fund No. 1); any lender to Hotel; and any managers, officers, directors, employees, contractors, agents and representatives and their successors and assigns of the foregoing (collectively, the "Hotel Parties")

harmless from and against any and all liabilities, losses, damages, causes of action, suits, claims, judgments or expenses, including reasonable attorneys' fees and court costs and expenses, including without limitation any of the foregoing resulting from COVID-19 (collectively, "Claims"), asserted or arising out of or relating in any way, directly or indirectly from the use or occupancy of any part of the Property or the use of any hotel services or facilities at the Property, by City or any of City's servants, agents, licensees, employees, contractors, volunteers, or invitees (including without limitation any Guests or any other persons City permits or causes to occupy any rooms at the Property) (collectively, "Invitees") including without limitation Claims made or asserted by any third parties (including any employees of the Hotel) for bodily injury, sickness (including without limitation sickness or death resulting from COVID-19), disease, loss of consortium or services, death or damage to property, by reason of or incident to City's or its Invitees' use of the Property, the Rooms or the Services, except to the extent that such indemnity is void or otherwise unenforceable under applicable law, and except to the extent such Claim was caused by the gross negligence or willful misconduct of the Hotel Parties, in which case damages shall be apportioned pro rata under the California doctrine of comparative fault. For clarity, the City's liability does not extend to Claims covered by Hotel's workers insurance; provided, however, that if any Hotel employee makes a workers compensation claim due to COVID-19, and such claim is denied, the City will reimburse Hotel in an amount equal to fourteen (14) days of such employee's salary or average daily pay, In addition, if any Hotel employee makes a claim under such employee's health insurance for reimbursement or payment for testing for COVID-19, and such claim is denied, the City shall reimburse Hotel in an amount equal to the employee's out-of-pocket cost for such test. The City acknowledges and agrees that, notwithstanding anything herein to the contrary, Highgate, the manager of the Property, (i) is included as a Hotel Party the City is obligated to indemnify under this Section 5.2.1, and (ii) shall have a direct right of action against the City to enforce the City's obligation to indemnify it hereunder. Hotel acknowledges and agrees that the City's is not obligated under this Section 5.2.1 to indemnify the Office Tenants against any Claims made by or against such Office Tenants.

5.2.2    **Indemnification by Hotel**. Hotel shall defend, indemnify, and hold City harmless from and against any and all Claims arising from Hotel's breach of Hotel's obligations under this Agreement, except to the extent that such indemnity is void or otherwise unenforceable under applicable law, and except to the extent such Claim was caused by the gross negligence or willful misconduct of the City or its Invitees, in which case damages shall be apportioned pro rata under the California doctrine of comparative fault.

Lakritz Decl., Exhibit A at 7–8.

**ARGUMENT**

**I.    LEGAL STANDARD**

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). The Supreme Court further held in *Atlantic Marine* that "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they

Motion to Transfer 3rd Party Complaint                              7                              n:\health\li2023\230661\01672688.docx
Case No. 23-cv-00915-WHA

evaluate a forum-selection clause pointing to a federal forum" under 28 U.S.C. § 1404(a). *Id.* at 61. Under that analysis, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018) (quoting *Atl. Marine*, 571 U.S. at 62); *see also Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661, 662 (9th Cir. 2016) ("A court should refuse to enforce a forum-selection clause '[o]nly under extraordinary circumstances unrelated to the convenience of the parties.'") (quoting *Atl. Marine*, 571 U.S. at 49).

The threshold step of the analysis is therefore to determine the validity of the forum selection clause at issue. *See Atl. Marine*, 571 U.S. at 62 n.5 ("Our analysis presupposes a contractually valid forum-selection clause."). The Ninth Circuit has held that that federal law governs the validity of forum selection clauses. *See, e.g.*, *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1164 (9th Cir. 2020) ("The validity of a forum-selection clause is governed by federal law.") (citation omitted); *Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 867 (9th Cir. 1991) ("Federal law governs the validity of the forum selection clause.") (citation omitted); *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1353 (9th Cir. 1990) (same) (citation omitted). Under federal law, "[f]orum selection clauses are *prima facie* valid." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)); *see also In re Becker*, 993 F.3d 731, 732 (9th Cir. 2021) ("Forum selection clauses are valid except in the rarest cases.") (citation omitted). A party challenging the validity of a forum selection clause "bears a 'heavy burden of proof'" and must show "that the clause was invalid for such reasons as fraud or overreaching." *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 835 (N.D. Cal. 2018) (quoting *M/S Bremen*, 407 U.S. at 15).

## II.    THE COURT SHOULD ENFORCE THE PARTIES' FORUM-SELECTION CLAUSE

The Ninth Circuit has held that language in the Emergency Agreement, as amended by the Sixth Amendment, should be enforced because the language used was "exclusive and mandatory." *See Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987); *see also N. California Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995) ("To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one.")

As noted above, the forum-selection expressly states that "Any legal suit, action, or proceeding arising out of or relating to this Amendment shall be instituted in the Superior Court for the City and County of San Francisco, and each party agrees to the exclusive jurisdiction of such court in any such suit, action, or proceeding." Lakritz Decl., Exhibit G at 4.

Applying Section 1440(a) reaches the same result. The Section 1404(a) factors are as follows: "(1) [the] plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum." *Lapachet v. California Forensic Med. Grp., Inc.*, No. 16-cv-06959-HSG, 2017 WL 3917209, at *2 (N.D. Cal. Sept. 7, 2017); *Bloom v. Express Servs. Inc.*, No. C 11-00009 CRB, 2011 WL 1481402, at *2–6 (N.D. Cal. Apr. 19, 2011). The first four factors are private-interest factors, and the last four are public-interest factors. *See Bloom*, 2011 WL 1481402, at *2–6.[1]

"[B]ecause both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Atl. Marine*, 571 U.S. at 61. The court must also deem all factors relating to the private interests of the parties (such as the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive"[2]) as weighing "entirely in favor of the preselected forum." *Id.* at 64. While the court may consider factors relating to the public interest (such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case

---

[1] Plaintiff in *Bloom* only had one claim for declaratory relief so the sixth factor, feasibility of consolidation with other claims, was not discussed. *See Bloom*, 2011 WL 1481402, at *2 n.3.

[2] *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

Motion to Transfer 3rd Party Complaint          9          n:\health\li2023\230661\01672688.docx
Case No. 23-cv-00915-WHA

in a forum that is at home with the law" [3]), those factors will rarely defeat a transfer motion. *Id*. at 64. The practical result is that a forum-selection clause "should control except in unusual cases." *Id.* This result is required, according to *Atlantic Marine*, because a forum-selection clause "represents the parties' agreement as to the most proper forum." *Id*. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 31 (1988)).

## III.   EXTRAORDINARY CIRCUMSTANCES DO NOT EXIST TO VOID THE PARTIES' FORUM-SELECTION CLAUSE

*Atlantic Marine* provides little guidance regarding what constitutes an "exceptional reason" or "extraordinary circumstances" in which courts should not give controlling weight to a valid forum-selection clause. Therefore, the Ninth Circuit has turned to the Supreme Court's prior guidance on this issue in *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1 (1972). *See Sun*, 901 F.3d at 1088. *M/S Bremen* held that a forum-selection clause was controlling unless the plaintiff made a strong showing that: (1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 15, 18; *see also Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013).

The Hotel cannot make a showing, strong or otherwise, that the forum-selection clause agreed to by the Hotel and the City should not be enforced. First, there is no allegation that either the Hotel or the City committed fraud or overreached in the negotiation of the Emergency Agreement or any of the Amendments. The Hotel is suing the City to enforce the Emergency Agreement and the Amendments. Second, there is no strong public policy in federal courts or California that would prohibit enforcement of the forum-selection clause agreed to by the Hotel and the City. As noted above, federal courts regularly enforce valid forum-selection clauses. Similarly, California courts also regularly enforce valid forum-selection clauses. *See, e.g.*, *Drulias v. 1st Century Bancshares, Inc*., 30 Cal.App.5th 696, (2018). Moreover, California has a statutory provision similar to 28 U.S.C. § 1404(a). Cal. Civ. Proc.

---

[3] *Id.* (alteration in original).

Motion to Transfer 3rd Party Complaint                10                n:\health\li2023\230661\01672688.docx
Case No. 23-cv-00915-WHA

Code § 410.30. Thus, enforcement of the forum-selection clause would not contravene a strong public policy of the forum in which suit is brought (or in California Superior Court, the venue the parties selected). Third, the Hotel will not be deprived of their day in court if the Court transfers the Hotel's action to the Superior Court for the City and County of San Francisco. California courts are equipped to hear contractual disputes based on California law concerning vents that occurred in San Francisco. The Ninth Circuit has acknowledged that California has as a strong public interest in deciding controversies involving its citizens. *See, e.g.*, *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 771 (9th Cir. 1991)

## CONCLUSION

For the foregoing reasons, the City respectfully asks the Court to grant the City's motion pursuant to 28 U.S.C. § 1404(a), and transfer the Hotel's action against the City to the Superior Court for the City and County of San Francisco.

Dated:  April 25, 2023

> DAVID CHIU
> City Attorney
> MEREDITH B. OSBORN
> Chief Trial Deputy
> LOUISE S. SIMPSON
> THOMAS S. LAKRITZ
> Deputy City Attorneys
>
>
> By: */s/ Thomas S. Lakritz*
> THOMAS S. LAKRITZ
>
> Attorneys for Third-Party Defendant
> CITY AND COUNTY OF SAN FRANCISCO